**Roanell SESSION, Appellant,**

v.

**Charles WOODS, Appellee.**

No. 06–05–00134–CV.

Court of Appeals of Texas, Texarkana.

Submitted Oct. 4, 2006.

Decided Nov. 2, 2006.

Rehearing Overruled Nov. 29, 2006.

Paul R. Clevenger, Thomas & Clevenger, Dallas, for appellant.

J. Scott Novy, Longview, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

Roanell Session and Charles Woods each independently put resources into, and both claim, 2.55 acres of real property in the Walker Pettet Survey, A–624, in Rusk County (the disputed property). By 1990, Session had taken possession of, and erected fencing and a "recreation" building on, the disputed property. In a 2002 tax sale,[1] Woods purchased 22.6 acres in the same headright survey and received a tax deed, which was filed for record December 10, 2002. Later, Woods removed the fence Session had installed, threatened to raze the building Session had built there, and demanded that Session vacate the disputed property. On May 3, 2005, Session filed suit against Woods setting out a cause of action for trespass to try title,[2] claiming

---

1. The tax delinquency sale was held to recover taxes owed to the Carlisle Independent School District and Rusk County. Tax deeds reflect that two tracts were sold; each was a one-half undivided interest in the 22.6 acres.

2. In a trespass to try title action a plaintiff recovers on the strength of his or her own

title. *Plumb v. Stuessy,* 617 S.W.2d 667 (Tex. 1981); *Land v. Turner,* 377 S.W.2d 181 (Tex. 1964); *Hejl v. Wirth,* 161 Tex. 609, 343 S.W.2d 226 (1961); *Woodrow v. Henderson,* 783 S.W.2d 281, 282 (Tex.App.-Texarkana 1989, no writ). Recovery can be based on proof of (a) title through regular chain of conveyances from the sovereign, (b) superior

that Session's use and occupancy of the disputed property, predating Woods' tax deed, had ripened limitations title, which defeats Woods' tax title to the extent it applied to the disputed property.

Woods sought and was granted summary judgment on the basis that the Texas Tax Code allows an attack on a tax sale only if it is initiated within one year—in some situations, two years—after the tax deed is filed for record. Here, over two years passed from the time the tax deed was filed, December 10, 2002, until Session filed suit, May 3, 2005. Woods argued that, because limitations had expired on any action attacking the tax deed, Session must lose as a matter of law, regardless of how effectual Session's arguments might have been if timely made. The trial court agreed with Woods. We affirm Woods' summary judgment.

The standard for reviewing a summary judgment under Rule 166a(c) of the Texas Rules of Civil Procedure is whether the successful movant at the trial court level carried the burden of showing that there is no genuine issue of material fact and that judgment should be granted as a matter of law. TEX.R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). In conducting our review, we take as true all evidence favorable to the nonmovant, and we make all reasonable inferences in the nonmovant's favor. *See Nixon*, 690 S.W.2d at 548–49.

■ A defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense. Thus, the defendant must (1) conclusively prove when the cause of action accrued, and (2) negate the discovery rule, if it applies and has been raised, by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered the nature of its injury. *KPMG Peat Marwick v. Harrison County Housing Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999). The discovery rule was neither pled, nor was proof adduced on that theory.[3] If the movant establishes that the statute of limitations bars the action, the nonmovant must then adduce summary judgment proof raising a fact issue in avoidance of the statute of limitations. *Id.*

Woods' motion for summary judgment is based solely on Section 33.54 of the Texas Tax Code. That section reads in its entirety as follows:

§ 33.54. Limitation on Actions Relating to Property Sold for Taxes

(a) Except as provided by Subsection (b), an action relating to the title to property may not be maintained against the purchaser of the property at a tax sale unless the action is commenced:

(1) before the first anniversary of the date that the deed executed to the purchaser at the tax sale is filed of record; or

(2) before the second anniversary of the date that the deed executed to the purchaser is filed of record, if on the date that the suit to collect the delinquent tax was filed the property was:

(A) the residence homestead of the owner; or

title out of a common source, (c) title by limitations, or (d) unabandoned prior possession of the land. *Plumb*, 617 S.W.2d 667.

**3.** This is not surprising because Session had attempted to purchase the property from Woods shortly after the tax sale, but they could not reach an agreement. Thus, a discovery rule would not help Session, even if one were to apply to Section 33.54 of the Texas Tax Code. *See* TEX. TAX CODE ANN. § 33.54 (Vernon 2001).

(B) land appraised or eligible to be appraised under Subchapter C or D, Chapter 23.

(b) If a person other than the purchaser at the tax sale or the person's successor in interest pays taxes on the property during the applicable limitations period and until the commencement of an action challenging the validity of the tax sale and that person was not served citation in the suit to foreclose the tax lien, that limitations period does not apply to that person.

(c) When actions are barred by this section, the purchaser at the tax sale or the purchaser's successor in interest has full title to the property, precluding all other claims.

TEX. TAX CODE ANN. § 33.54. There is no claim or evidence which would trigger application of subsections (a)(2) or (b) on Session's behalf. That leaves Session faced with subsections (a)(1) and (c).

Woods' motion for summary judgment is supported by the following summary judgment evidence: the judgment from the tax suit, the order of sale from the tax suit, a copy of the sheriff's deed, an abstractor's certificate, and Woods' affidavit stating that an abstract company did a title search at his request on the disputed property—the findings of the search being that he and his predecessors in title are the only parties with an interest of record in the property.

■ Statutes of limitations further the policy that one must diligently pursue one's legal rights at the risk of losing them if they are not timely asserted. *City of Murphy v. City of Parker*, 932 S.W.2d 479, 481–82 (Tex.1996). Session's lawsuit was brought more than two years after the tax deed was filed. Thus, based on the clear language of the statute, unless some legal principle supersedes the statute, Session cannot prevail. We examine Session's arguments.

■ *Lack of Personal Service?* Session argues that, because he was not personally served with notice of the proposed tax sale, it cannot have any effect on his interest in the disputed property. Thus, he suggests, his attack is not actually against the tax deed, but more an effort to obtain a declaration that the disputed property is not affected by the tax deed.

■ To "commence" a suit, the party bringing suit must, in addition to filing his or her petition, exercise reasonable diligence in perfecting service. *Rigo Mfg. Co. v. Thomas*, 458 S.W.2d 180, 182 (Tex.1970); *Three Thousand Six Hundred Thirty-Nine Dollars ($3,639.00) in United States Currency v. State*, 133 S.W.3d 698, 700 (Tex.App.-Corpus Christi 2003, no pet.); *see also* TEX.R. CIV. P. 22.

In *Kidd v. Rasmus*, the Galveston court held that the attorney filing a tax suit has constructive notice of all claimants whose interests could have been ascertained by the exercise of reasonable diligence. 285 S.W.2d 415 (Tex.Civ.App.-Galveston 1955, writ ref'd). *Kidd* was based on a statute that is no longer in existence—a statute which expressly provided that record owners were *not* to be included in the designation "unknown owners."

*Limitations Title Established?* Session also argues that, because he was an owner of the property as an unserved but obvious adverse possessor,[4] then the delinquent tax judgment could not have transferred his title to the property. He has provided no authority to support this position. It is based mainly on the claim that Session

---

**4.** The affidavits on which he bases his claim are dated in August 2005 and state that Ses-

sion had been in actual and exclusive possession of the property for at least fifteen years.

actually owned the property because he would have been able to prove title as an adverse possessor. This misapprehends the nature of an adverse possessor. The statutes allow one who can prove adverse possession for the requisite time periods and circumstances to be adjudged the owner of the property. *See Masonic Bldg. Ass'n of Houston, Inc. v. McWhorter*, 177 S.W.3d 465, 469 (Tex.App.-Houston [1st Dist.] 2005, no pet.).

■ To establish title through adverse possession, the possession must unmistakably assert a *claim* of exclusive ownership in the occupant. *Rick v. Grubbs*, 147 Tex. 267, 214 S.W.2d 925, 927 (1948); *Perkins v. McGehee*, 133 S.W.3d 287, 293 (Tex.App.-Fort Worth 2004, no pet.). Though most of the cases focus on "exclusive ownership," the caselaw reflects that adverse possession constitutes a "claim" until the claim is adjudicated and transformed into ownership of record. The very nature of adverse possession is that a person takes possession of property adversely to other ownership rights, and is allowed to prevail later in court because of continuous adverse use over time without the possession being broken by the true owner.

■ The concept of adverse possession allows a person to *claim* title to real property presently titled in another. For the purpose of this analysis, that does not mean the claimant already has the title. Session was not an owner of record. We also note that the diligence described in the cases set out above was not diligence to find trespassers on the property, but to ensure that all owners of record were

properly notified. Even for record owners, however, the right to redeem the property by timely payment of the taxes or to timely challenge the tax deed were the proper remedies—ones which could be lost by inaction.[5]

Session, as a claimant of limitations title through adverse possession, was served by posting. He argues that this is inadequate because his open and notorious possession of the land entitled him to personal service, and because the taxing entity made no attempt to determine whether the land was actually being possessed by anyone besides the record owner. In the few recent cases involving tax sales and claims of adverse possession, we find no stated requirement that a taxing entity is required either to search on the ground for trespassers who might conceivably have some inchoate interest in the property, or to personally serve such claimants. *See, e.g., Jordan v. Bustamante*, 158 S.W.3d 29, 39 (Tex.App.-Houston [14th Dist.] 2005, pet. denied). *Compare Norris v. Harry Hott & Assocs., Inc.*, 612 S.W.2d 630, 632 (Tex.Civ.App.-Dallas 1981, no writ) (involving individuals with record interest in land).

■ *Session Not a Defendant?* Session argues that the tax sale did not affect his limitations title, because of the effect of Section 34.01(n) of the Texas Tax Code. That section governs tax deeds and reads as follows:

> (n) The deed vests good and perfect title in the purchaser or the purchaser's assigns to the interest *owned by the defendant* in the property subject to the

5. *See Patton v. Minor*, 103 Tex. 176, 125 S.W. 6, 7–8 (1910) (late suit against tax deed by adverse claimant barred, even if adverse claimant could establish limitations title against previous owners); *Cook v. Slusky*, 659 S.W.2d 110 (Tex.App.-Houston [14th Dist.] 1983, no writ) (defense not asserted within

three-year redemption period, not entitled to have issues submitted in trespass to try title action); *Hughes v. Price*, 229 S.W.2d 79, 80 (Tex.Civ.App.-Amarillo 1950, no writ) (redemption impossible because adverse possession not proven).

foreclosure, including the defendant's right to the use and possession of the property, subject only to the defendant's right of redemption, the terms of a recorded restrictive covenant running with the land that was recorded before January 1 of the year in which the tax lien on the property arose, a recorded lien that arose under that restrictive covenant that was not extinguished in the judgment foreclosing the tax lien, and each valid easement of record as of the date of the sale that was recorded before January 1 of the year the tax lien arose. The deed may be impeached only for fraud.

TEX. TAX CODE ANN. § 34.01(n) (Vernon Supp.2006) (emphasis added). Session argues that, because Section 34.01(n) focuses on the interest "owned by the defendant," the only interest that was transferred was that of the owners of record, Howard Smith and Audrey Smith. We disagree, since the record owners were not the only defendants in the tax suit.

The September 23, 2002, tax suit judgment lists defendants as including "the unknown owner or owners of the described property ... and any and all other persons, including adverse claimants, owning or having any legal or equitable interest in ... the [disputed] property, who were duly served as required by law by means of citation by posting. . . ." The judgment further states that the "above-named Defendant(s) who were served with citation ... were the owner(s) of record of the below-described land or were claiming some right, title, or interest thereto at the time of the institution of this suit. . . ." The judgment additionally recites that an attorney ad litem was appointed for the defendants cited by posting and that the attorney ad litem filed an answer on behalf of those defendants. Session was clearly included by description within those defendants.

A tax foreclosure suit must include the record owners, *American Realty Corp. v. Tinkler,* 107 S.W.2d 627 (Tex.Civ.App.-San Antonio 1937, writ ref'd); lienholders, *State Mortgage Corp. v. Groos,* 12 S.W.2d 260 (Tex.Civ.App.-San Antonio 1929, writ dism'd); and all parties owning or claiming any interest in the property. *Ball v. Carroll,* 42 Tex.Civ.App. 323, 92 S.W. 1023 (Galveston 1906, writ ref'd). This tax suit appears to have done that.

■ *Not the Same Property?* Session also argues separately that Woods was not entitled to summary judgment because he did not prove conclusively that the disputed property was contained within the property description of the tax deed. From Session's answer to Woods' counterclaim, however, it is clear that Session claims at worst that he was a co-tenant with Woods, and at best that the tax sale, while valid against the named defendants, did not convey Session's interest.

Session's petition contains a metes and bounds description of the disputed property, which was evidently created for purposes of defining his adverse possession claim.[6] In his response to Woods' motion for summary judgment, Session claimed that Woods had not provided any proof that the property subject to the tax sale encompassed the property that Session claimed. We disagree.

Woods stated in his affidavit attached to the motion for summary judgment that Woods had paid an abstract company to do a title search on the disputed property and that only Woods and the Smiths were revealed in the record as having an interest in the property. Session, in his response, offers no proof to the contrary; he simply

6. There is no claim that the disputed property had ever been separately conveyed.

relies on his position that Woods provided no evidence that the disputed property is within Woods' tract.

There is evidence that the property obtained through the tax sale encompassed the disputed property. There is no evidence to the contrary. Indeed, Session brought this lawsuit only in an attempt to obtain ownership against Woods' claim that the disputed property was located within the property Woods had purchased. Under these facts and pleadings, we must conclude that Woods adequately proved that the property described by the tax deed had been transferred and properly filed over two years before Session filed suit, and in the absence of any evidence that the disputed property was located outside the property Woods purchased in the tax sale, we must also conclude this contention is without basis.

 *Not an Attack on the Tax Deed?* Session also argues that, because this lawsuit is not really an attack on the tax deed, Section 33.54 is inapplicable. That argument is not viable. Session filed this suit in trespass to try title against the tax sale purchaser. The title being "tried" is that conveyed by the tax deed. *See Patton,* 125 S.W. at 7–8.

 *Limitations Bars Session.* Notwithstanding all of Session's arguments, Section 33.54 of the Texas Tax Code prevents Session from now challenging Woods' title to the land purchased at the tax sale. An action for title to property may not be maintained against the purchaser of the property at a tax sale unless the action is commenced "before the first anniversary of the date that the deed executed to the purchaser at the tax sale is filed of record." TEX. TAX CODE ANN. § 33.54(a)(1). Moreover, a person may not commence an action challenging the validity of the tax sale after the time set out by Section 33.54(a)(1). TEX. TAX CODE ANN. § 34.08(b) (Vernon 2001); *see Jordan,* 158 S.W.3d at 39–40. Well over two years had elapsed after the tax deed was recorded before Session brought his suit. Woods conclusively proved that limitations applied.

Even if Session, at some time, could successfully have proved an adverse possession title, he was required to file such an action within the period set out by the absolute language of the statute. Because he failed to do so, Session's claims came too late.

 Woods adds an argument that we should affirm on an additional ground: because he showed that Session did not meet the statutory requirements to challenge the validity of the tax sale. A person may not "commence" an action against the purchaser of the property at a tax sale unless he or she deposits into the registry of the court an amount equal to the delinquent taxes, penalties, and interest specified in the foreclosure judgment, plus all costs of the tax sale, or alternatively, files an affidavit of the inability to do so. TEX. TAX CODE ANN. § 34.08(a)(1), (2) (Vernon 2001). Session did neither. Because Session's suit was necessarily an attack on the tax sale, this alternative ground also supports the rendition of summary judgment in favor of Woods. *See Jordan,* 158 S.W.3d at 39–40.

We affirm the judgment.